Your honors, good morning. Gary Burcham on behalf of Appellant Mr. Abakar. I'd like to start with the first issue in my brief, which is the jury instruction issue. There were seven counts in this case, but essentially what this trial boiled down to was one question. Did Mr. Abakar falsely state that his wife, Ms. Walker, lived with him at the Santa Rosalita Street apartment where Mr. Abakar lived? The government introduced substantial evidence at trial showing that his wife spent a substantial amount of her time at her grandfather's house helping take care of him. That she had things there, had a room there. But it was Mr. Abakar's testimony, it was his defense, that she also resided or resided at their apartment. And they were husband and wife and that was the apartment that they... Well, that's obviously the first question. It was presented to the district court in a written fashion. The district court said it wanted to think about it overnight, do some research and decide what the proper instruction would be. The next day the district court came back, had crafted its own instruction based upon search and seizure law, created some elements to help the jury decide where the residence was. And that instruction omitted really the meat and potatoes of Mr. Abakar's defense. Well, that instruction attempted to incorporate all of the elements raised by both sides and the defense counsel agreed that it was a good instruction. So was the issue preserved? It's subject to plain error. The government said it's been waived and should not be heard at all by this court. I think it's been forfeited and it's subject to plain error because there was no objection made at that point. But certainly this is not a situation where we have waiver. It wasn't like counsel withdrew the written instruction. It wasn't like counsel affirmatively submitted the wrong instruction or something like that. Inexplicably counsel just failed to object when the district court proposed its own instruction. And so that's why we're on plain error. The government argues that the instruction the district court ultimately proposed was correct because the CFR dealing with immigration issues and Section 1101 of Title VIII say that you can only have one residence. Essentially residence is the same as domicile. It's your primary place of residence and you can only have one. There's a couple of problems with that approach. First of all, when Mr. Abacar was asked these questions about where does your wife live, there's no evidence he was read any sort of instruction from the CFRs or from Title VIII. He was asked as a layperson where does your wife live. And so he answered that question in a common manner. Where is your wife's residence? He didn't answer that pursuant to some legal definition from Title VIII. He answered that pursuant to what did he think. And what he thought was, well, my wife lives with me. Her residence is at my apartment. And so I don't think we should look at this specifically within the confines of Title VIII or immigration statutes because that's not how the question was presented to Mr. Abacar. It was presented to him in a common sense layperson fashion, and that's the way he answered the question. The government also says that the second reason that that approach is wrong. Are there any cases on this issue? Well, what I cited to the court is not on this particular issue, but what I cited to the court are other areas in the law where the courts have found that there are multiple residences. I cited the SORNA cases where courts have found that a person could have more than one residence. I cited child support cases where courts have held that a person could have more than one residence. Let's assume that you're right, that you can have multiple residences. How does this instruction preclude the defense from arguing multiple residences? I'm looking at the jury instruction. I don't see any language that would preclude that argument by the defense. There's no specific language in there saying that you cannot have more than one residence, but that's why I cited to this court Escobar-DeBrite case. And what Escobar-DeBrite says is an argument, a defense theory of the case, without an instruction in support of it really has little value. And in this case, the jury needed to be told. For Mr. Abicar really to have his defense presented to the jury, the jury needed to be told that a person can have more than one residence. Now, he could have argued that absent an instruction, but the defense was gutted when the district court submitted that instruction to the jury. It was silent as to multiple residences. Silence is very different than affirmatively informing the jury that a person can have multiple residences. That was Mr. Abicar's defense. And under this court's longstanding case law that says if you have evidence in support of the theory of the defense, you deserve an instruction for that, this is a situation where the district court committed error in not including that component of the instruction to the jury. Was it plain? It was plain because the defense counsel told the district court what the instruction should have been in the written instruction. Substantial rights, it went towards a defendant's ability to present a defense to a charge. And then noticing, I think it definitely goes to the integrity and reputation of a trial when a defendant is facing seven felony counts and is deprived his right to meaningfully present his theory of the case and his defense to the jury. The evidence was overwhelming that the only place that he lived was with his friend on that particular street, Rosalita, and he did keep some clothing where his, quote, wife, unquote, lived just in case someone came around and wanted to check up on whether he lived there or not. Well, the district court said the evidence was actually, he used the word irrefutable because the district court's approach to this was you can only have one residence. And if you can only have one residence, then Mr. Abicar had a tough road to hoe because there was substantial evidence that she spent a lot of time at her grandparents' house. And so that's really the basis of the problem right there is that the breadth of his defense was unnecessarily and improperly narrowed by the instruction from the district court. And if you look at it from the district court's approach, the evidence probably was overwhelming. But if we had a proper scope of the theory of the defense in this case, I would submit that it was a viable defense that Mr. Abicar should have been able to present better to the jury. And no objection was made? Not at that moment. That is correct. The second issue I maybe want to reserve one minute for rebuttal concerns the placement of the N-400 before the jury. I think finding error in this instance should be quick for the court. MESA SORIA stands for the proposition you cannot use administrative findings to prove up an element in a subsequent criminal case. When the government put the N-400 up on the screen before the jury with the red writing which said specifically denied false testimony under oath and submitting fraudulent documents. Did the defense counsel have a copy of that exhibit? It's sort of unclear as to exactly why that exhibit wasn't redacted before trial. I just asked whether he had a copy of it. Sure, yes. The unredacted. Yes, he did. He had it, so he didn't object to it. But then what went into evidence was a redacted version. The problem with that, Judge, is that unless the jurors specifically went back and looked at that exhibit in the jury room, they never would have known it was redacted because the district court actually said that this was admissible evidence. The district court never took the time to create curative instructions and deal with this when it was before the jury. And the government, I think, conceded that it shouldn't have been there because they immediately said they would redact it. And so by the district court failing at that time to take some sort of curative measures to deal with this, the jurors might not have ever known that it was redacted in the first place. And so I think it's true it was never entered into evidence in the unredacted form, but because of the unique posture of how this was shown and dealt with by the district court and then redacted with the jury never actually being told it was redacted, I think it's a stretch to say that the jurors knew that that evidence was not part of the record and should not be considered. So I would say that there's a gray area in this case. Were the jurors handed copies of the unredacted? No, it was shown on screen in front of the jurors for a couple of minutes. One of those overhead projectors. Exactly, yes, sir. Yeah, those overhead projectors put people to sleep. Unless you have in red ink, you know, a notation like this, which was germane. This was the issue. This was the issue in the case. There was no reason for this administrative finding from Officer Thomas to be put before the jury. It was. It wasn't dealt with properly, and that created a real danger that the jury convicted Mr. Avocar. I want to save 13 seconds. Ten seconds. Yes, please, Your Honor. Thank you. Well, you asked to save a minute, and we've been asking you questions. I'd like to ask you another question. Yes, please. Still would like to have you a minute for the rebuttal. He testified that he lived with Morgan, whatever her name was. Walker, yes. Morgan Walker. And she testified she had never spent a night with him. She had seen him from time to time but never resided at the apartment or anywhere else. How is that not perjury under any theory? Well, number one, Mr. Avocar's position was that they did spend time together. They did live a more customary husband and wife life, and so that Ms. Walker was not being truthful. She was shaping her testimony to help. But I think in other areas, and this goes back to our first issue, in this definition of residence, someone could have an apartment and pay rent on that apartment but spend every night with their boyfriend or girlfriend at their place. And so where is their apartment? Did they spend it? But wasn't he accused of committing perjury when he testified that he lived with her? At that apartment. Correct. Correct. If she didn't spend any nights there and never did she ever live with him at that apartment? He said Mr. Avocar testified that she did spend nights there. They did have. If the jury believed her, then he was guilty. Yes, but there is still. But the issue in the case was residence. The issue in the case wasn't where did they spend nights together. The issue, the way it was charged by the government, was false statements and perjury with respect to where her residence was. And so if Mr. Avocar believed in good faith that they had a residence together, his husband and wife, at the Santa Rosalita Street apartment, even if the jury found that, well, they hadn't consummated the marriage or they didn't spend nights together, I think there was still an area for the jury to say, well, he honestly believed that they shared that apartment. That's why the residence jury instruction was crucial. And that's why, again, I think that even if we look at the evidence as to his time at the, her time with her grandfather, it was still harmful and prejudicial to Mr. Avocar because there was that area where she could have lived, she could have resided additionally at that apartment, at least in the eyes of Mr. Avocar. Thank you. All right. Thank you. Good morning, Your Honors. May it please the Court. Melanie Sartoris for the United States. This case involved ample, and as the district court described, irrefutable, clear and clearly and unambiguously, describing it at the witness's testimony, evidence, that the defendant did not live with his purported citizen spouse. In addition to Ms. Walker, who testified that she didn't live there, that she never spent a night there, although she did visit the defendant from time to time as they were friends at the apartment, it's important to understand that the defendant's own roommate testified that she did not live there. Now, this is a man, Abdul Akeba, who was defendant's best friend. They had lived together from 2001 to 2010, including the entire period in question in this case. Initially, when the defendant came to this country, they shared a one-bedroom apartment. At some point in 2003, they moved into a two-bedroom apartment, which is where the two of them lived until 2010. That witness, Abdul Akeba, testified that Ms. Walker, who is a person who he knew was actually his ex-wife's daughter, his prior stepdaughter, did not live there in this two-bedroom apartment with them at any time. He also testified that she did not sign a lease on the apartment, that he did not ever at any point sign a lease with her on the apartment, and that lease reflects that Ms. Walker did resign the apartment, which was a lease that the defendant provided to immigration, is in the government's excerpts of record at 3GR 393-94. But you will see from the leasing company's documents that the actual lease, the legitimate lease that the leasing company had for that apartment, was consistent with the testimony of the defendant's own roommate, and it reflected that Ms. Walker was not on the lease. And that's at 3GR 453-54. And I bring up the lease and the defendant's roommate's testimony because that is a – Abdul Akeba was a witness that had no motivation to assist the government. It was his best friend and roommate of nine years that he testified. Did the defense, in closing, argue the multiple residences issue? The focus of – and we read the argument again last night. The focus of the argument was that she did live there, but the defense did acknowledge that she – defense counsel did discuss that she went to help her ailing grandfather and did spend a significant amount of time at the grandfather's house. I don't recall that he ever framed it in terms of she resided in two places at the same time. But there was nothing to prevent the defense counsel from arguing that. And in addition to that, this – The government's argument, I take it, was more focused on the fact that she never lived in the defendant's apartment rather than as a legal matter that you can't have multiple residences. That's exactly correct, Your Honor. It just didn't fit the facts of this case. It did not. And in addition to the witness testimony and witness after witness, neighbors, family members, the roommate, the citizen spouse, I brought up the documents because the documents show as well, independent documents are separate from the testimony of witnesses, that the defendant submitted a fraudulent lease to Immigration Services in support of his application, which further goes to show that he knew that he was lying about where she lived. He didn't explain at any point. He didn't submit the actual lease and then explain to Immigration that she lived in two places and that she had an ailing grandfather. This entire story that he is really presenting here is not something that's supported by witness testimony or the documents in the case. Ms. Walker's DMV records also show. Are you arguing that if the instruction was incorrect, that it's a harmless error? I am, Your Honor. It is the government's position that the argument was waived, not only because defense. That's your first argument. Yes. The second argument is that the instruction is not erroneous.  Yes, that even under the defense's own, if the defense counsel's instruction had been given, given the facts of the case, if the only witness that testified in support of defendant's position is the defendant himself, if the jury had believed defendant's testimony that everybody else was lying, he would have prevailed under either instruction. Thank you. What happened with the N-400 application being displayed to the jury? Was this something that both parties just missed as an oversight, or was it displayed to the jury because the government's contention was that this would be admissible? Well, it was something that was an oversight to display in a sense. The Exhibit 1 was provided to defense counsel. It was the A file that was provided. Well, the reason I'm asking is because as I understand it, you were the trial counsel. That's correct, Your Honor. And so was it an oversight on your part, something that you would have redacted, or was it the government's belief that this was admissible and that's why it was displayed, and then when the objection came up, the government submitted to the redaction? I just wanted to know factually how that progressed. Factually, defense counsel had raised objections. I had conversations with defense counsel about particular items in the A file that defense had a question about, and I had agreed to withdraw them just to remove the issue from the case. I didn't agree that they weren't admissible, but just I agreed to withdraw them. That stamp was not something that defense counsel had raised with the government, but it was consistent with the other items that I had agreed to remove from the case. The finding of the adjudicator and the INS that the documents were false was. Oh, I see. So there was a conversation in which the government had agreed that these sort of evidence would be removed. Correct. Was that this particular exhibit, the N-400 form, just slipped through the cracks? Is that? That's correct, that stamp. And so when defense counsel raised it, and we went sidebar with the court on it, I immediately agreed to redact it from the exhibited trial and to not show it any longer to the jury. That said, the government also agrees with Judge Feist's analysis of it that it would have been admissible. This is a case where the government had to prove materiality with respect to the lies, and the fact that the adjudicator, on behalf of the INS, found the documents to be false, the evidence with respect to residence, does show that that particular lie, the lie of residence is a material matter for the INS. The government agreed to remove it from the record solely to, because the evidence was so strong with the witness testimony that would be coming in, it was just, it was to remove the issue from, really from, to make it fair. Defense counsel requested, and it's something that I had agreed to do in advance of trial, but that said, I do believe the district court's analysis of it as being material and admissible, if the government had wanted to admit it, is a correct analysis. But nonetheless, we did remove it, and to the extent that the defense counsel raised the objection in order to not have it admitted into evidence, he was successful in that objection. He objected and was not admitted into evidence. It wasn't the level of issue that the defense now is suggesting, that somehow the district court, it was so, so egregious that the district court should have immediately declared a mistrial. Well, was the admissibility of these documents considered by the court out of the presence of the jury? In other words, you say, Your Honor, the government wishes to present into evidence these documents, and, you know, he marked them as admissible, and give a copy to the defense. And this is, you know, they're getting the start of the trial. And did the court go through each one with both counsel? No, that's not how it was. So you just handed him a stack of exhibits. Or you handed him exhibits. How did he get it? So actually, with respect to that exhibit, exhibit one, I provided to defense counsel, and my memory is not, it's been a few years, but I do recall for certain it was days before the start of trial. It'll get better with age. So in advance of trial, days if not a week, there was some period of time that exhibit was completed, and I provided it to defense counsel well in advance of trial so he could have it and look at it. And we discussed parts of it, and he removed. In discovery, the A file was provided months before trial. And so it was that exact document, the A file, that became government's exhibit one, but defense counsel had had it for a significant period of time. So that was in the A file when he had it. Yes, for months. I mean, months defense counsel had the A file. Once we officially made an exhibit and I prepared the defense counsel's exhibit binder, as soon as that binder was ready, I provided it to defense counsel so he could start working with it, just as a courtesy in advance of trial. I think the court required counsel to provide the exhibits the first day of trial, but it is something that I did do in advance of trial in this case because we were prepared to do so, so I did. Okay. You want to save your overtime. Thank you, Your Honors. Just a couple of quick points, Your Honors. It wasn't just Mr. Abacar who testified that Ms. Walker lived there. When the CBP officer called from LAX to check and see where she lived, she told that officer on the telephone that she lived at the apartment with Mr. Abacar, that that was her residence. So it wasn't just Mr. Abacar on an island by himself spewing this out. There was other evidence supporting that, in fact, evidence from Ms. Walker herself. With respect to the N-400, to prove materiality in a case like this. She was lying all along. I think she was shaping her testimony. Well, yeah, she was shaping it, okay, misshaping it. To prove materiality, you don't get the findings in. You ask the officer, does the question regarding where the wife lives factor into your decision, and you stop there. You don't then put in the administrative adverse factual findings on the exact issue in this case. Well, you had it. I didn't have it. Don't you look at it when you get it? I wasn't trial counsel. Well, you weren't. That's not an excuse, though. We shouldn't rely on trial counsel to go through the exhibits before a trial and excise the inadmissible material. Really? The government should excise its own. How do you know if it's inadmissible? Because Mesa Soria could not be clearer that you can't use this stuff to prove up elements in a criminal case. We shouldn't rely upon defense counsel having to redact a gotcha by the government. So we really don't need defense counsel. We need defense counsel, but we need the government in the first instance. We need to have a way cut. I hope not, Your Honor. I'll be unemployed. We need the government to go through its exhibits in the first place and take out, obviously, inadmissible evidence, and the administrative findings on the exact issue at play in this case could not have been more inadmissible, and we shouldn't have had to rely on defense counsel to go through a stack of exhibits before a trial and find the stuff that wasn't inadmissible. You've made a vigorous argument. Thank you very much, Your Honor. All right, matter submitted.
judges: Pregerson, Reinhardt, Nguyen